IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>MARLIN SANTANA THOMAS,<br><br>     Defendant. | No.  4:20-cr-118-JAJ<br><br><br><br>**ORDER** |

This case comes before the Court pursuant to defendant's October 5, 2020 Motion to Dismiss [Dkt. 30]. The government filed its resistance on November 16, 2020 [Dkt. 37]. On November 30, 2020, defendant filed his reply [Dkt. 42], and a Motion for Hearing [Dkt. 43]. Because the Court finds the terms of the plea agreement are ambiguous, the Motion for Hearing is **GRANTED**. The Court will hold an evidentiary hearing and admit parole evidence to determine what those terms mean in the plea agreement.

BACKGROUND

On August 12, 2020, defendant Marlin Santana Thomas was charged by a 17-count superseding indictment. He is charged with sex trafficking, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1) or (b)(2) (Counts 1, 2, 3, 8, 11, 12, 14, and 16); transportation for the purpose of prostitution, in violation of 18 U.S.C. § 2421(a) (Counts 4, 6, and 9); transportation for purpose of prostitution through coercion and enticement, in violation of 18 U.S.C. § 2422(a) (Counts 5, 7, and 10); distribution of a controlled substance to a person under age 21, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 859 (Counts 13 and 15); and use of a facility of interstate commerce to facilitate prostitution, in violation of 18 U.S.C. § 1952(a)(3)(A) (Count 17).

Thomas moves to dismiss the indictment contending that it violates his previous plea agreement. Thomas was previously charged in this Court with assorted distribution of heroin offenses. [*United States v. Thomas*, Case No. 4:18-cr-051-JAJ (S.D. Iowa) at Dkt. 23]. That case was based on an investigation by the Des Moines Police Department ("DMPD"), led by Officer

1

Wilshusen, which included controlled buys in January and February 2018, and a search of Thomas's apartment on February 28, 2018. On that date, Thomas was charged by criminal complaint with distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(C). [*Id.* at Dkt. 2]. A 5-count indictment was returned on March 27, 2018. [*Id.* at Dkt. 23]. Thomas entered a plea agreement with the government and pled guilty to Count 1 of the Indictment. [*Id.* at Dtk. 39 (filed in the current case as Def. Ex. U, Dkt. 30-22) [hereinafter "Plea Agreement"]].

> Paragraph 3 of Thomas's plea agreement in Case No. 4:18-cr-051 reads:
>
> <u>No Further Prosecution</u>. The Government agrees that Defendant will not be charged in the Southern District of Iowa with any other federal criminal offense arising from or directly relating to this investigation. This paragraph and this Plea Agreement do not apply to (1) any criminal act occurring after the date of this agreement, (2) any crime of violence, or (3) any criminal offense which Defendant did not fully disclose to law enforcement during Defendant's interviews pursuant to any proffer or other agreements with the United States.

Plea Agreement, ¶ 3.

The parties agree that the first and third exceptions do not apply to the present prosecution. Thus, to determine whether the current prosecution is barred by the Plea Agreement, the Court must determine if the current charges "aris[e] from or directly relat[e] to this investigation," and if they are crimes of violence. There are four phrases in the agreement that are potentially ambiguous: (1) "arising from"; (2) "directly relating to"; (3) "this investigation"; and (4) "crime of violence."

## LEGAL STANDARD

Plea agreements are like contracts and, thus, are generally interpreted "according to basic principles of contract law." *United States v. Beattie*, 919 F.3d 1110, 1114 (8th Cir. 2019); *see also Puckett v. United States*, 556 U.S. 129, 137 (2009) ("[P]lea bargains are essentially contracts.").[1] The party asserting a breach of the plea agreement has the burden to show that a breach has occurred. *United States v. Raifsnider*, 663 F.3d 1004, 1009 (8th Cir. 2011). Interpretation of plea

---

[1] The contract analogy is a useful, but imperfect, tool. A plea agreement "is not simply a contract between two parties." *United States v. Norris*, 486 F.3d 1045, 1048 (8th Cir. 2007) (en banc). It also requires the acceptance of the district court to be effective. *Id.* This is so because a plea "necessarily implicates the integrity of the criminal justice system." *Id.* Until the district court accepts the plea, "it is a mere executory agreement" from which "either party may withdraw." *Id.* at 1048–49.

agreements, however, is tempered by their constitutional implications—it is a violation of due process to allow the government to breach a promise that induced a guilty plea. *Margalli-Olvera v. INS*, 43 F.3d 345, 351 (8th Cir. 1994); *see also Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

To ensure uniform federal interpretation of plea agreements, the federal courts apply federal common law. *United States v. Norris*, 486 F.3d 1045, 1054 (8th Cir. 2007) (en banc) (Colloton, J., concurring). The courts look to the unambiguous terms of the plea agreement to determine the intent of the parties. *Margalli-Olvera*, 43 F.3d at 351. Specifically, "courts look to the reasonable beliefs of the defendant at the time a plea is entered to determine whether a plea agreement has been breached." *United States v. Olesen*, 920 F.2d 538, 541 n. 1 (8th Cir. 1990).

But if the intent of the parties is not clear because the terms of the agreement are ambiguous, "the ambiguities are construed against the government." *Margalli-Olvera*, 43 F.3d at 353. Terms are ambiguous if they are susceptible to two or more different interpretations. *United States v. Lewis*, 673 F.3d 758, 763 (8th Cir. 2011). Because the Eighth Circuit applies general principles of contract law to plea agreements, *Beattie*, 919 F.3d at 1114, and because Thomas's plea agreement was fully integrated, *see* Plea Agreement, ¶ 27 ("This Plea Agreement, and any attachments, is the entire agreement between the parties."), it is appropriate to apply the parol evidence rule to this agreement. Therefore, the Court will accept extrinsic evidence of the meaning of terms in the plea agreement, only to the extent that it finds those terms are ambiguous. *See United States v. Copeland*, 381 F.3d 1101, 1106 (11th Cir. 2004).

ANALYSIS

**1.     *"Arising from"***

Thomas argues that the phrase "arising from" "is broad and unambiguous." [Def. Br., Dkt. 30-1 at 21]. He argues that the phrase applies to "almost any causal relationship." [*Id.* at 22 (quoting *United States v. Bradford*, 433 F. Supp. 2d 1001, 1003 (N.D. Iowa 2006)]. The government does not propose any definition of "arising from" but argues that the sex trafficking charges did not arise out of or directly relate to the heroin investigation because the heroin

investigation was temporally limited to January and February 2018 and "it originated independently from the investigation of sex trafficking." [Gov. Br., Dkt. 36 at 17-119].

The cases that have interpreted the phrase "arising from" have done so in the context of civil litigation, particularly in interpreting insurance contracts under state law. *See, e.g.*, *Great Am. All. Ins. Co. v. Windermere Baptist Conference Ctr.*, 931 F.3d 771, 773 (8th Cir. 2019) (applying Missouri law).[2] But the phrase is subject to more than one reasonable interpretation—in fact, it may represent a spectrum of causation and relationship. These cases do not address what the parties would have intended this phrase to mean within a federal plea agreement, which implicates defendant's due process rights. Because the Plea Agreement is ambiguous as to what charges may "arise from" the investigation, the Court will hear extrinsic evidence as to what the parties intended by this phrase.

### 2. *"Directly relating to"*

Neither party offers a definition for the phrase "directly relating to," although Thomas argues that is broad. [Def. Br. Dkt. 30-1 at 22].[3] The Court of Appeals for the Eighth Circuit has described the phrase "relating to" as "the broadest language the parties could reasonably use." *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co*, 118 F.3d 619, 621 (8th Cir. 1997). But the Eighth Circuit has recently stepped back from an unbounded meaning of "relating." *Barcomb v. General Motors LLC*, 978 F.3d 545, 550 (8th Cir. 2020). Although the court described the term "relating to" as "broad" and "indeterminate," it acknowledged that the words "'extended to the furthest stretch of their indeterminacy stop nowhere' and so context 'may tug in favor of a narrower reading.'" *Id.* (quoting *Mellouli v. Lynch*, 575 U.S. 798, 135 S. Ct. 1980, 1990 (2015).

---

[2] *See also Bethel v. Darwin Select Ins. Co.*, 735 F.3d 1035, 1039 (8th Cir. 2013) (Minnesota); *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 7 (1st Cir. 2000) (Massachusetts); *Capitol Specialty Ins. v. Indus. Elecs. LLC*, 407 Fed. Appx. 47, 51 (6th Cir. 2011) (Kentucky). At least one Court of Appeals has interpreted the phrase in the context of statutory interpretation. *See Hamilton v. United Healthcare of La.*, 310 F.3d 385, 391 (5th Cir. 2002).

[3] The cases that interpret the phrase "relating to" tend to do so in the context of statutory interpretation. *United States v. Weis*, 487 F.3d 1148, 1152 (8th Cir. 2007) (quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 383, (1992)); *see also Estes v. Fed. Express Corp*, 417 F.3d 870, 872 (8th Cir. 2005) ("Estes's state law claims are preempted if the claims 'relate to' an employee benefit plan, 29 U.S.C. § 1144(a), such that they '[1] have a connection with or [2] reference to such a plan.'" (quoting *Howard v. Coventry Health Care, of Iowa, Inc*., 293 F.3d 442, 446 (8th Cir.2002)) (alterations in original)).

That the word "relating" is broad is not a functional definition for what the parties reasonably understood "directly relating to" to mean at the time they executed the plea agreement. First, the cases that have interpreted "relating" have not done so when it is modified by the word "directly." This adverb adds a layer of ambiguity to the reach of the word "relating." Second, "under federal common law 'a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.'" *Harris v. The Epoch Group. L.C.*, 357 F.3d 822, 825 (8th Cir. 2004) (quoting *Transitional Learning Cmty. at Galveston, Inc. v. US Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir.2000)). That the word "relating" is broad does not help the Court to distinguish it from "arising from." It is not clear from the face of the agreement how the parties distinguished the phrases "arising from" and "directly relating to." Therefore, the Court will hear extrinsic evidence as to what the parties understood these phrases to mean when they entered the plea agreement.

3.     *"This investigation"*

The government argues that "this investigation" refers to "the investigation that spanned from January through February 2018 that was led by Officer Wilshusen." [Gov. Br., Dkt. 36 at 17]. The government argues "this investigation" does *not* include any federal or state rape or sex trafficking investigations because "[a]ll of these investigations were handled by separate officers, sometimes in separate units of DMPD." [*Id.*]. In contrast, Thomas argues that the term applies to "*the government's and its agent's* investigation." [Def. Reply, Dkt. 42 at 1 (emphasis in original)]. He argues that the term applies broadly and is not limited to the information the government shares with a defendant. [*Id.*].  Thus, defendant argues, the term "includes the investigation into Mr. Thomas, including all of the misconduct that the DMPD was investigating and of which the government was aware, which includes allegations of drug trafficking, sexual abuse and assault, and trafficking of individuals." [Def. Br., Dkt. 30-1 at 22–23].

The term "this investigation" as used in Thomas's Plea Agreement is subject to multiple reasonable interpretations. Thomas urges the Court, based on the holding in *Lagos v. United States*, 138 S. Ct. 1684, 1688–89 (2018), to find that investigation refers to "the full scope of the government's and its agent's investigation." [Def. Reply, Dkt. 42, at 1]. But the Supreme Court in *Lagos* did not define what constitutes the government's investigation—it only considered "whether

the scope of the words 'investigation' and 'proceedings' is limited to government investigations and criminal proceedings, or whether it includes private investigations and civil or bankruptcy litigation." *Lagos*, 138 S. Ct. at 1688. *Lagos* does not help the Court determine what information falls within the "full scope" of the government's investigation. The words "this investigation" may refer only to the information gathered based on suspected heroin distribution and to prove those charges. They may also refer to the entire body of facts known by the U.S. Attorney's Office and the DMPD related to Thomas. The words are ambiguous. Because the phrase is subject to multiple reasonable interpretations, the Court will hear extrinsic evidence as to its meaning.

**4.**     *"Crime of violence"*

Thomas argues that the phrase "crime of violence" is ambiguous, and thus should be construed against the government. Thomas argues that the Court should apply the definition of "crime of violence" found in 18 U.S.C. § 16 and apply the categorical approach to each count to determine if he has been charged with a "crime of violence." [Def. Br., Dkt. 30-1 at 19–21]. In contrast, the government argues that the phrase "crime of violence" "has a very straightforward, commonplace understanding: that Defendant committed an act of *violence*." [Gov. Br., Dkt. 36, at 25 (emphasis in original)].

The starting point for interpreting a contract is the plain meaning of the terms. *See Margalli-Olvera*, 43 F.3d at 351. But when a contract uses "technical terms or words of art, . . . we afford these terms 'their technical meaning when used in a transaction within their technical field.'" *Hartford Fire Ins. Co. v. Clark*, 562 F.3d 943, 947 (8th Cir. 2009) (quoting Restatement (Second) of Contracts § 202(3)(b) (1981)). The practice of federal criminal law is a specialized field. Within this field, litigants are familiar with the term "crime of violence" and its uses. *See United States v. Barefoot*, 754 F.3d 226, 247 (4th Cir. 2014); *United States v. Carr*, No. 2:16-cr-00265-CMN-CWH, 2018 WL 10016170 (D. Nev. Sept. 21, 2018). There is no indication in the Plea Agreement that the parties meant anything other than the familiar, technical meaning of this term. It is, therefore, unambiguous. The phrase "crime of violence" means "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. §§ 16, 924(c)(3), and 3156(a)(4); USSG §4B1.2(a).[4]

---

[4] This is referred to as the "elements clause." Some of these statutory provisions also refer to "any other offense that is a felony and that, by its nature involves a substantial risk that physical force

Furthermore, the Court will apply the categorical approach to determine if the crimes charged in the Superseding Indictment are crimes of violence. *See Barefoot*, 754 F.3d at 247; *Carr*, 2018 WL 10016170 at *3.

## CONCLUSION

Because the terms "arising from," "directly relating to," and "this investigation" are ambiguous as used in Thomas's Plea Agreement, the Court will hold an evidentiary hearing. The Court will accept extrinsic evidence as to what the parties believed these phrases to mean at the time they entered the Plea Agreement.

Upon the foregoing,

**IT IS ORDERED** that defendant's November 30, 2020 Motion for Hearing [Dkt 43] is granted.

**IT IS FURTHER ORDERED** that an evidentiary hearing as to the parties' understandings of the phrases "arising from," "directly relating to," and "this investigation" shall be held on **January 7, 2021, at 1:30 pm.**

**DATED** this 7th day of December, 2020.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

---

against the person or property of another may be used in the course of committing the offense" (the "residual clause"). However, the Supreme Court has found that, in some circumstances, the residual clause is unconstitutionally vague. *See, e.g.*, *Sessions v. Demaya*, 138 S. Ct. 1204 (2018). Because a plea agreement must be interpreted against the government, *Margalli-Olvera*, 43 F.3d at 353, the Court will apply the narrowest definition of "crime of violence" that the parties could reasonably have believed would apply when the agreement was signed.