IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>MARLIN SANTANA THOMAS,<br><br>      Defendant. | Case No. 4:20-cr-118-JAJ<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

## <u>INTRODUCTION</u>

The Court is already familiar with the background of this case. The parties engaged in significant pretrial litigation related to the investigation and facts. Before the start of a two-week trial, but after the plea entry deadline, Mr. Thomas pled guilty under a plea agreement. This case is now set for sentencing. There are various guidelines and factual objections that Mr. Thomas has made to the PSR. The government has indicated that it plans to present evidence related to these objections at the sentencing hearing. The government has also indicated that it will not be moving for the third level of acceptance of responsibility because Mr. Thomas pled guilty after the plea entry deadline. That said, the government must recognize that the savings to the Court, the victims, and the government from Mr. Thomas's plea to multiple counts, thereby avoiding a two-week criminal trial during the COVID pandemic, were substantial.

Ultimately, as this Court has recognized in prior cases, the sentencing in a sex trafficking case should be driven by the conduct, not the guidelines. The appropriate sentence depends on the scope of the conduct, number of victims, and the nature of the force, fraud, or coercion used. For the reasons discussed herein, the Court should sentence Mr. Thomas to between 262 to 293 months' imprisonment, with credit for the time he has served since February 2018.

1

## I.   PSR FACTUAL AND SENTENICNG GUIDELINES ISSUES

In his objection letter [Dkt. No. 174], Mr. Thomas lodged multiple objections to the facts asserted in the offense conduct and the sentencing guidelines calculation.  Regarding the offense conduct summary, Mr. Thomas requests that the Court incorporate the summary of the investigation into Mr. Thomas's criminal conduct.  (Ex. A, Summary Timeline of Investigation (based on various exhibits and pleadings previously submitted in this case, which are incorporated herein).)

The following discusses Mr. Thomas's objections to the PSR and how the Court should resolve these objections.

### A.  Mr. Thomas objects to the assertions that he forcibly sexually assaulted the victims, and to the cross reference to USSG § 2A3.1.

Mr. Thomas recognizes that various victims (e.g., E.J., S.A., J.W., L.G., N.L.) have told law enforcement officers that Mr. Thomas forcibly sexually assaulted them.  Taking those assertions as established, the PSR applies a cross reference in USSG § 2G1.1(c)(1) to USSG § 2A3.1(a)(2).  (*See* PSR ¶¶ 149, 155, 161, 167, 186.)  Mr. Thomas objects to the assertions that he forcibly sexually assaulted these women, or other women, and to the application of the cross reference.

Now, to be fair, Mr. Thomas also recognizes that these women have *reported* to LEO that Mr. Thomas forcibly sexually assaulted them.  If the PSR were revised to say that these women "reported to LEO" that they were sexually assaulted, there could be no objection to that because that statement would be factually true.  With that revision, the PSR would be correct, but the cross reference should still not apply.

The government has indicated that it would be opposed to this proposed revision, and that it intends to call the various victims and witnesses to prove up the facts over Mr. Thomas's

objection.  Ultimately, however, the government must recognize that whether or not the cross

reference applies is largely an academic exercise, because either way Mr. Thomas's offense level

is starting at a high point.  Mr. Thomas recognizes that the base offense level, under USSG §

2G1.1, is 34 for Counts 1, 2, 3, 8, 11, and 16 (related to E.J., S.A., J.W., L.G., K.D., and N.L.).

The adjusted offense levels for these Counts, in PSR ¶¶ 154, 160, 166, 173, 179, and 192,

respectively, should be 34.

### B.  Mr. Thomas objects to the two-level enhancements under USSG § 3A1.1(b)(1).

The PSR includes a two-level enhancement under USSG § 3A1.1(b)(1) for the counts

related to E.J., S.A., J.W., N.L., and G.M.  (*See* PSR ¶¶ 151, 157, 163, 189, 197).  Mr. Thomas

objects to these enhancements.  First, he objects because there is no factual basis to conclude that

Mr. Thomas knew or should have known about the various victims' vulnerabilities.  USSG §

3A1.1(b)(1) does not provide for an enhancement simply because a victim is vulnerable, it only

applies if the facts show the defendant knew or should have known of the vulnerability.  Second,

the purported vulnerabilities for E.J., S.A., J.W., and N.L., which include addiction or

socioeconomic difficulty or prior involvement in prostitution, are not vulnerabilities recognized

by the guidelines.  The guidelines define "age, physical or mental condition" or "particular

susceptibility" to criminal conduct as vulnerability.  *See* USSG § 3A1.1(b)(1), Application Note

2.  While Mr. Thomas trafficked E.J., S.A., J.W., and N.L., their own statements indicate that

they also independently prostituted themselves.  [*See* Def.'s Rule 412 Motion, Dkt. No. 78,

incorporated herein.]  Third, as for G.M., her statements to LEO and at the grand jury undercuts

any reasonable conclusion that she was a vulnerable victim.  [*E.g.*, Def.'s Ex. Y to Reply to Mot.

to Dismiss, Dkt. No. 42-4 at 26:01–16 (G.M. called a friend to come to the hotel, and they hung

out at the hotel).]  The Court should not include a USSG § 3A1.1(b)(1) enhancement.

**C.  Mr. Thomas objects to the two-level enhancements under USSG § 2A3.1(b)(4)(B).**

The PSR should not apply a cross reference to USSG § 2A3.1.  But even if that cross

reference applied, the Court should not impose a two-level enhancement under USSG §

2A3.1(b)(4)(B) for the guidelines calculation related to L.G. and N.L. (PSR ¶¶ 169, 188.)  USSG

§ 2A3.1(b)(4)(B) states that a two-level enhancement should apply if the victim sustained

"serious bodily injury."  "Serious bodily injury" is defined in § 1B1.1's application notes as

"injury involving extreme physical pain or the protracted impairment of a function of a bodily

member, organ, or mental faculty; or requiring medical intervention such as surgery,

hospitalization, or physical rehabilitation," or any offense involving "conduct constituting

criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law."

There is not sufficient evidence that L.G. and N.L. suffered serious bodily injury as that term is

defined, and the Court should not impose this enhancement.

**D.  The PSR incorrectly includes facts related to N.H. as relevant conduct.**

The allegations related to N.H. do not fall within the definition of "relevant conduct."

USSG § 1B1.3 defines "relevant conduct" as "all acts and omissions committed, aided, abetted,

counseled, commanded, induced, procured, or willfully caused by the defendant . . . that

occurred during the commission of the offense of conviction, in preparation for that offense, or

in the course of attempting to avoid detection of responsibility for that offense." Because

offenses covered by USSG § 2G1.1 and § 2G1.2 do not group under USSG § 3D1.2(d), USSG §

1B1.3(a)(2) does not sweep in acts caused by the defendant that were part of the same course of

conduct or common scheme or plan as the offense of conviction.  For offenses of conviction in

violation of 18 U.S.C. § 1591, offenses related to different victims, different times, or different

conduct are not relevant conduct.  *See* USSG § 1B1.3.

Because there is no assertion that the alleged sex trafficking of N.H. occurred in conjunction with the sex trafficking of other victims in the offenses of conviction, the "sex trafficking and drug distribution to N.H." does not fall within relevant conduct.  The PSR focuses on the temporal overlap, concluding that facts related to N.H. should be included as relevant conduct because the time period during which K.D. and N.H. were trafficked overlapped.  That misses the mark.  Whether facts related to N.H. should be included as relevant conduct turns on whether Mr. Thomas trafficked N.H. during the course of trafficking K.D., not on whether there was an overlap in the time period.  Mr. Thomas pled guilty to Count 11, which was sex trafficking of K.D. by force, fraud, or coercion between about November 2014 to March 2015. Under § 1B1.3, whether sex trafficking of any other individuals during that same time frame falls within "relevant conduct" turns on whether Mr. Thomas committed these acts "during the commission of" or in the "preparation of" the "offense of conviction" – i.e., sex trafficking of K.D.  There is no evidence that, during the commission of trafficking K.D., Mr. Thomas also trafficked N.H.  While there may be temporal overlap, the information does not that suggests Mr. Thomas trafficked N.H. and K.D. together, or that he trafficked N.H. as part of the effort to traffic K.D.  The PSR appears to understand that temporal overlap of events cannot be enough because the PSR does not treat events related to E.B., H.O, or B.T. as relevant conduct, although there is temporal overlap.  Any facts related to N.H. should similarly not be included as relevant conduct.

## E.  Even if facts related to N.H. are part of the relevant conduct, the PSR incorrectly includes a "pseudo-group" for N.H.

The PSR improperly attributed a "pseudo-group" related to N.H. for non-existent counts of conviction and based on allegations to which Mr. Thomas did not agree.  USSG § 1B1.2 requires, first, that the PSR "[d]etermine the offense guideline section in Chapter Two (Offense

Conduct) applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted)."  Here, there are six different counts of conviction related to E.J., S.A., J.W., L.G, K.D., and N.L.  For each of those counts, USSG § 2G1.1 applies.[1]  Second, "after determining the appropriate offense guideline section," which is § 2G1.1 here, determine the guidelines range.  Third, "a plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)."  Here, Mr. Thomas stipulated to the offense related to G.M.  While he did not plead to that count, his admissions justify an additional "pseudo-count" under USSG § 1B1.2(c) for G.M.

Unlike for G.M., however, Mr. Thomas did not stipulate to any facts in a plea agreement related to N.H.  Accordingly, it is inappropriate to create a "pseudo-group" for uncharged conduct related to N.H.  Applying USSG § 1B1.2, even if the conduct related to N.H. is relevant conduct, it is inappropriate to create a whole other "pseudo-group" for N.H., because Mr. Thomas did not stipulate to any conduct related to N.H.

The PSR seems to suggest that USSG § 2G1.1(d) requires treating each victim that is within relevant conduct separately, regardless of whether there is a stipulation as to that victim or not.  But that is not what § 2G1.1(d) means.  USSG § 2G1.1(d) simply provides that, if there is more than one victim that is part of the same count, or if there is more than one victim that was trafficked during the commission or preparation of the offense of conviction, then each victim

---

[1]  Under § 2G1.1, in the case of a plea agreement that contains a stipulation that specifically establishes a more serious offense than the offense of conviction, the offense guideline section applicable is the stipulated offense.  There is a plea agreement here, but there is no stipulated offense that produces a higher offense guidelines range for the related offenses.

should be treated as if it were a different count.  It does not mean that the PSR should create

pseudo-groups for unstipulated conduct like that purportedly for N.H.

The PSR should strike PSR ¶¶ 180 to 185 (group for N.H.), and recalculate PSR ¶ 201

(multiple count adjustment) and the remaining paragraphs accordingly.

**F. The PSR incorrectly excludes events as relevant conduct when they are, improperly increasing his criminal history score.**

Complicating the calculation, the PSR treats some events as not relevant conduct when

they are relevant conduct, and the result again is an improper calculation of Mr. Thomas's

sentencing guidelines range.  USSG § 4A1.2(a)(1) defines "prior sentences" – i.e., those that

may receive criminal history points, as "any sentence previously imposed upon adjudication of

guilt . . . for conduct not part of the instant offense."  If the conduct is part of the instant offense

because it is relevant conduct, it should not receive criminal history points.

The PSR includes as relevant conduct an alleged rape of S.A. by Mr. Thomas in 2013.

(PSR ¶¶ 72, 73, 74.)  Mr. Thomas objects to these paragraphs as not sufficiently supported by a

preponderance of the evidence.  But if the alleged rape is treated as relevant conduct, then Mr.

Thomas should not receive three criminal history points in PSR ¶ 244 under USSG § 4A1.2(a).

The circumstances of the alleged rape summarized in PSR ¶¶ 72 to 74 are the basis for the

charges related to S.A. in PSR ¶ 244.

Also, the PSR includes as relevant conduct acts of distribution of heroin by Mr. Thomas

to N.L., from a date unknown but by January 2018 to February 28, 2018.  Mr. Thomas's acts of

distribution of heroin to N.L. in 2018 are part and parcel with Mr. Thomas's conspiracy to

distribute heroin in 2018, for which he was convicted as referenced in PSR ¶ 243.  Because Mr.

Thomas's conspiracy to distribute heroin is relevant conduct to the offense related to N.L., Mr.

Thomas should not receive any criminal history points in PSR ¶ 243.

The criminal history score for Mr. Thomas should be reduced by six points.

**G. The PSR incorrectly includes enhancements under USSG § 2G1.3(b)(2)(B) for Group 8 related to G.M.**

The PSR improperly includes a two-level enhancement under USSG § 2G1.3(b)(2)(B). That subsection provides for a two-level increase if "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct." For G.M., the facts suggest that no acts by defendant represented an "undue influence" over the minor that compromised the voluntariness of the minor related to the sex trafficking. As G.M. testified to the grand jury in March 2018, she didn't think sex trafficking was a big deal and negotiated with Johns for more money. [Def.'s Ex. Y to Reply to Mot. to Dismiss, Dkt. No. 42-4 at 27:11–28:03.] While upsetting, the facts here do not support a conclusion that Mr. Thomas exercised undue influence over G.M. to engage in prohibited sexual conduct.

**H. Mr. Thomas should receive credit for acceptance of responsibility.**

Setting aside the fact that Mr. Thomas pled guilty to six different counts of the Superseding Indictment, and stipulated to illegal conduct related to another count, the PSR concludes that Mr. Thomas should not receive any credit for acceptance of responsibility because of some of his objections. Mr. Thomas acknowledges his stipulation of facts in Attachment A to the plea agreement, and his objections are not intended to be a refutation of those facts. His objections are to parts of the specific details of the PSR's paragraphs, and not meant to dispute the prior stipulations in the plea agreement. For example, in Attachment A to the plea agreement, Mr. Thomas stipulated that he transported E.J. to Chicago to engage in commercial sex acts. Mr. Thomas recognizes that he did this. At the same time, in PSR ¶ 19, it asserts that he took E.J. to Chicago multiple times with J.W. Mr. Thomas objected to that assertion. It is not inconsistent for Mr. Thomas to acknowledge that he took E.J. to Chicago and at the same time

object to the assertion that he took E.J. and J.W. together.  Likewise, Mr. Thomas stipulated in

Attachment A that, on at least one occasion, he used physical violence toward E.J., punching her

in the face.  He recognizes that he did this.  At the same time, in PSR ¶ 20, the PSR asserts that

Mr. Thomas punched E.J. to the extent that E.J. bled a large amount and then "intentionally

spread the blood all over the towels and walls to leave evidence."  It is not inconsistent for Mr.

Thomas to recognize the stipulation in Attachment A, but then object to the specific factual

assertion in PSR ¶ 20.  Similarly, Mr. Thomas stipulated in Attachment A that he kept the

proceeds from the commercial sex acts, but not that he kept *all* the proceeds.  The PSR writer

takes issue with 8 varied objections to the 140 paragraphs in the relevant conduct section, but

these objections are not directly contradictory to Mr. Thomas's stipulations.  That said, to the

extent that there are direct inconsistencies between Attachment A and Mr. Thomas's objections,

Mr. Thomas would withdraw them.

The Court should give two levels off for acceptance of responsibility under USSG §

3E1.1(a).  With those two levels off, but no other changes to the PSR, the advisory guidelines

range would be 360 to life.

## I.   Applying proper grouping, and consistent with these objections, the advisory guidelines range is 235 to 293 months.

Consistent with the above objections, the advisory sentencing guidelines range is

significantly lower than the advisory guidelines range stated in the PSR, if full credit to Mr.

Thomas is given for the full three-levels for acceptance of responsibility.  The offense level

calculation should be as follows:

- The base offense level for Groups 1, 2, 3, 4, 5, and 7 (for E.J., S.A., J.W., L.G., K.D., and N.L., respectively) should be 34 under USSG § 2G1.1(a)(1).  No enhancements apply beyond that for these groups.

- Group 6 (for N.H.) should be stricken, because conduct related to her is not relevant conduct and there is no stipulation in the plea agreement as to N.H.

- The base offense level for Group 8 (for G.M.) is 30 under USSG § 2G1.3(a)(2) (PSR ¶193). No enhancements should apply under USSG § 2G1.3(b)(2)(B) and USSG § 3A1.1(b)(1). Two-level enhancements each should apply under USSG § 2G1.3(b)(3) and (b)(4). The adjusted offense level for this group is 34.

- With 7 separate groups, each with an adjusted offense level of 34, applying USSG § 3D1.4, the PSR should add 5 levels to 34, for a combined adjusted offense level of 39.

- The Court should give two levels off for acceptance of responsibility under USSG § 3E1.1(a), for a final offense level of 37.

- The Court should, however, vary downward by another level to give the credit for acceptance of responsibility that the government will withhold under § 3E1.1(b). That would produce a final offense level of 36.

Consistent with the above objections, the Court also should not include the three criminal history points in PSR ¶ 243 (related to distribution of heroin) and ¶ 244 (related to S.A.). Taking those six points off of the criminal history score establishes a total criminal history score of six and a criminal history category of III.

That results in an advisory guidelines range of 235 to 293 months, with the Court varying downward by one level to give full credit for acceptance of responsibility. Without the third level off under § 3E1.1(b), the advisory guidelines range would be 262 to 327 months.

### J. The victims overstate the financial gain by Mr. Thomas.

PSR ¶ 29 states that E.J. estimated that Mr. Thomas "took over $150,000 from her during the year he trafficked her." That statement is unreliable. If E.J. had to make approximately $1,000 per day, that would mean she worked for 150 days to make that amount, or about five months straight working every day. But E.J.'s written statement indicates that she only came to Des Moines 5 or 6 times. According to her written statement [Def.'s Ex. B to Rule 412 Motion, Dkt. No. 78-3], after she went to Chicago with Mr. Thomas, she returned immediately to Minnesota. She remained in Minnesota in October to December 2009. Her written statement indicates that she was working as a prostitute for another woman in Spring 2010. She left Mr.

Thomas for the last time in October 2010.  Her written timeline makes it improbable that she

worked 150 days, making $1,000 per day on average, for Mr. Thomas.  The amount of

trafficking was significantly less than that.  E.J. is not credible on this issue.

Similarly, the estimate in PSR ¶ 50 that Mr. Thomas made $96,000 from J.W. working

for him is not credible.  While Mr. Thomas recognizes he made some amount of money due to

J.W.'s sex work, practically speaking it is not credible that Mr. Thomas made $96,000 over a 16

week (or less than 4 month period) from J.W.

## II.   APPROPRIATE SENTENCE UNDER 18 U.S.C. § 3553(a)

Sentencing is difficult in cases like this.  No matter the advisory guidelines, § 3553(a)

directs the Court to impose a sentence that is sufficient but not greater than necessary.

Ultimately, the Court can be guided by the sentences that it has imposed in other cases

similar to this one.  Among those similar, fairly recent cases are *United States v. Darren

Coleman*, No. 4:18-cr-00053-JAJ (S.D. Iowa).  As this Court is aware, it sentenced Mr. Coleman

on multiple counts of sex trafficking with other trafficking victims not named in the indictment

to 25 years' imprisonment.  Judgment for Darren Coleman, *Coleman*, No. 4:18-cr-00053-JAJ,

Dkt. No. 449.  In the government's sentencing memo for Mr. Coleman, the government noted

that Mr. Coleman "object[ed] to nearly every single paragraph in the PSR, which describes his

conduct trafficking several different women."  Gov't Sent. Memo, *Coleman*, No. 4:18-cr-

00053-JAJ, Dkt. No. 428 at p.2.  The facts as described by the government in its sentencing

memorandum for Mr. Coleman are similar to those asserted by the government here.  As

described by the government, Mr. Coleman trafficked at least 7 different victims, using physical

violence and threats of physical violence, drugs, and rape to exercise control over the victims.

*Id.*  As the government noted in *Coleman*, however, "[u]ltimately, as the Court has said in the

sentencing of Coleman's co-defendants, this is a case that is driven by conduct, not the guidelines." Gov't's Sent. Memo, *Coleman*, No. 4:18-cr-00053-JAJ, Dkt. No. 428 at p.2.

In considering the appropriate punishment here, the Court should also consider the issues raised prior to Mr. Thomas's plea in this case, including the issues raised in Mr. Thomas's Rule 412 motion, motion to dismiss, and other pretrial motions, and the hearings on those motions. [*See* Dkt. Nos. 30, 43, 44, 52, 59, 78, 97, 110, 117 (incorporated herein with their briefs and exhibits).]

Whatever sentence the Court imposes, the Court should give credit for the time that Mr. Thomas served in his prior federal case, 4:18-cr-0051-JAJ, adjusting the sentence in this case to account for the period of imprisonment served by Mr. Thomas since February 2018. *See* USSG § 5G1.3(b). Mr. Thomas's prior federal case is relevant conduct to this case. Indeed, as the Court has recognized, at least one of the counts originally charged in the superseding indictment in this case arose from or directly related to the investigation in this case.[2] Otherwise, the facts giving rise to Mr. Thomas's conspiracy to distribute heroin in case 4:18-cr-0051-JAJ overlap with the allegation that Mr. Thomas used heroin to coerce N.L. to engage in illegal commercial sex work. Applying USSG § 5G1.3, the Court should reduce Mr. Thomas's sentence to account for the time served by Mr. Thomas in case 4:18-cr-0051-JAJ.

Finally, if the Court finds that Mr. Thomas has engaged in sexual assaults as asserted in the PSR, and increases Mr. Thomas's punishment because of that, Mr. Thomas preserves a challenge to his sentence under the Sixth Amendment and the Fifth Amendment's Due Process Clause. Sentencing Mr. Thomas based on a judicial finding of guilt related to separate uncharged

---

[2] Mr. Thomas preserves for appeal the Court's denial, in part, of his motion to dismiss. [*See* Dkt. Nos. 30, 52, 59.] The parties' plea agreement permits Mr. Thomas to appeal the Court's February 2, 2021, Order denying in part the motion to dismiss.

but alleged offenses, based on a preponderance of the evidence, and then punishing based on this finding, violates the Fifth and Sixth Amendments.  A criminal defendant has a Sixth Amendment "right to have a jury find the facts behind his punishment." *Hurst v. Florida*, 577 U.S. 92, 98 (2016).  As the Supreme Court has explained, this principle "extends down centuries into the common law." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (citing *United States v. Gaudin*, 515 U.S. 506, 510–11 (1995)).  When it comes to the reasonableness of a sentence, a judge-found fact should not shift the reasonableness window; only a jury can do that.  *See Alleyne v. United States*, 570 U.S. 99 (2013); *see also Jones v. United States*, 574 U.S. 948 (2014) (Scalia, J., dissenting from denial of cert.) ("It unavoidably follows that any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury. It *may not* be found by a judge."); *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring with denial of petition for rehearing en banc) ("Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial. If you have a right to have a jury find beyond a reasonable doubt the facts that make you guilty, and if you otherwise would receive, for example, a five-year sentence, why don't you have a right to have a jury find beyond a reasonable doubt the facts that increase that five-year sentence to, say, a 20-year sentence?"); *United States v. Galloway*, 976 F.2d 414, 436-44 (8th Cir. 1992) (Bright, J., dissenting) ("If the former Soviet Union or a third world country had permitted [the practice of punishing people for conduct that had not been the subject of indictment or trial] human rights observers would condemn").  Moreover, 18 U.S.C. § 3553(a)(2)(A) provides that, in determining the sentence to be imposed, the Court must consider the need for the sentence "to provide just punishment for the

offense."  Sentencing based on facts not admitted by a defendant or found by a jury seems at odds

with that command.  Mr. Thomas preserves a challenge to his sentence under the Fifth and Sixth

Amendments.

## **CONCLUSION**

For the reasons stated, the Court should sentence Mr. Thomas to a sentence of between 262

to 293 months.

Respectfully submitted,


    /s/   *Andrew Graeve*
Andrew Graeve, Asst. Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: andrew_graeve@fd.org
ATTORNEY FOR DEFENDANT


CERTIFICATE OF SERVICE
I hereby certify that on September 30, 2021, I electronically
filed this document with the Clerk of Court using the ECF
system which will serve it on the appropriate parties.

    /s/ Theresa McClure